**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3469-17T4

QUINCELL ADAMS,

      Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____

Submitted January 23, 2019 – Decided February 15, 2019

Before Judges Yannotti and Rothstadt.

On appeal from the New Jersey Department of Corrections.

Quincell Adams, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Suzanne M. Davies, Deputy Attorney General, on the brief).

PER CURIAM

Quincell Adams, an inmate in the State's correctional system, appeals from a final determination of the New Jersey Department of Corrections (NJDOC), which denied Adams's application for transfer to a halfway house in a residential community release program (RCRP). We reverse and remand the matter to the NJDOC for reconsideration and issuance of a new decision.

Adams is presently incarcerated at South Woods State Prison (SWSP) in Bridgeton. He is serving a fifteen-year custodial sentence, with a mandatory minimum term of twelve years, eight months, and twenty-nine days, as a result of his conviction of conspiracy to commit murder and unlawful possession of a handgun. He will become eligible for parole on September 12, 2019.

On October 18, 2017, Adams submitted an application for transfer to a RCRP. The Institutional Classification Committee (ICC) at SWSP approved Adams's application. However, by letter dated November 8, 2017, the NJDOC's Office of Community Programs and Outreach Services (OCPOS) denied the application based on the nature and seriousness of the offense for which Adams was incarcerated.

In January or February 2018, Adams submitted another application for transfer to a RCRP. The ICC approved the transfer. By letter dated March 9,

2018, the OCPOS denied the application based on the nature of the offense. The letter stated that Adams should participate in "[a]nger [m]anagement [p]rogramming." This appeal followed.

On appeal, Adams argues that the NJDOC's decision is arbitrary, capricious, and unreasonable. He contends he "has reached his rehabilitative potential within the confines of . . . [the] prison setting," and that the only means to achieve "his full rehabilitative potential" and gradual reintegration into society is a transfer to a community-based, halfway-house. Adams asserts the transfer to a RCRP should be made while he is an inmate to ensure "the legitimate interests of all parties."

We note initially that appellate review of a final decision of an administrative agency is limited. In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). We will uphold an agency's final decision in the absence of "a clear showing that [the decision] is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." J.B. v. N.J. State Parole Bd., 229 N.J. 21, 43 (2017) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)).

"In determining whether [an] agency['s] action is arbitrary, capricious, or unreasonable," we consider:

> (1) whether the agency's action violates express or implied legislative policies . . .; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

It is well-established that inmates do not have a constitutionally-protected interest in an initial placement in a RCRP. See Shabazz v. N.J. Dep't of Corr., 385 N.J. Super. 117, 124 (App. Div. 2006) (citing Trantino v. N.J. State Parole Bd., 296 N.J. Super. 437, 464 (App. Div. 1997), modified in part on other grounds and aff'd, 154 N.J. 19 (1998)). However, in reviewing an agency's decision, we must determine whether its action is consistent with the applicable law. See In re Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. at 482-83).

When an individual is convicted of an offense and committed to an institution, the Commissioner of the NJDOC or his designee "may designate . . . any available, suitable, and appropriate institution or facility" as a place of confinement. N.J.S.A. 30:4-91.2. The term "facility" "include[s] private

nonprofit community-based residential treatment centers which provide for the care, custody, subsistence, education, training and welfare of inmates." Ibid.

Under the NJDOC's rules, an ICC makes decisions on various matters, including participation in a RCRP, in accordance with specified criteria enumerated in N.J.A.C. 10A:9-3.3(a). See N.J.A.C. 10A:9-3.1. The criteria include the inmate's age, family status, correctional facility adjustment, the nature and circumstances of the inmate's "present offense," and "[a]ny other factor pertinent to the inmate's case." N.J.A.C. 10A:9-3.3(a)(3), (4), (6), (11), and (23).

The ICC of the prison where an inmate is currently housed "may approve an eligible inmate for participation in a [RCRP] in accordance with [the] applicable provisions of N.J.A.C. 10A:20[-1 to -4.43] when the inmate has been classified to full minimum custody status and meets the criteria for assignment to the program." N.J.A.C. 10A:9-3.12. General eligibility criteria for RCRPs are set forth in N.J.A.C. 10A:20-4.4. Among other things, an inmate seeking transfer to a RCRP must "[b]e classified [as] full minimum by the [ICC]," "[n]ot demonstrate an undue risk to public safety," and "[h]ave made a satisfactory overall correctional facility adjustment and be seen as not likely to pose a threat to the safety of the community." N.J.S.A. 10A:20-4.4(a)(1), (2), and (5).

The inmate also must meet the specific eligibility criteria in N.J.A.C. 10A:20-4.5. The regulation provides that

> (a) In addition to the general eligibility criteria in N.J.A.C. 10A:20-4.4, candidates for [RCRPs] who have not been convicted of a sexual offense[,] as defined in N.J.S.A. 30:4-91.8[,] or an arson offense[,] and who do not demonstrate an undue risk to public safety shall be eligible [for a transfer to a RCRP,] within the time frames established in (b) below of:
>
> . . . .
>
> 3. An actual parole eligibility date established by the New Jersey State Parole Board;
>
> (b) Candidates are eligible for participation in a residential community program when the candidate:
>
> 1. Is otherwise eligible and who has less than eighteen months remaining to be served and is determined by the Commissioner or designee to be appropriate for participation in a [RCRP].
>
> . . . .
>
> [Ibid.]

Here, the record shows that in October 2017, the ICC at SWSP approved Adams's transfer to a RCRP. However, the OCPOS thereafter denied the application based on the nature and seriousness of his offense. In January or February 2018, Adams submitted another application for admission to a RCRP.

6

The ICC at SWSP again approved the application, but the OCPOS thereafter denied the application due to the nature of the offense.

We note that there is sufficient evidence in the record to support a determination that Adams is not eligible for a halfway-house placement due to the nature and seriousness of the offense for which he is incarcerated. As stated previously, Adams was convicted of conspiracy to commit murder. Adams's presentence report (PSR) indicates that in 2006, he was a member of the Bloods street gang. He met with other gang members and they decided to kill L.N.

According to the PSR, L.N. also was a member of the Bloods. L.N. apparently had reported to the police on something Adams and other gang members had done. They agreed that Sammy Ling would shoot L.N. They called L.N. and told her to meet them at a store. Ling shot L.N. as she was walking home. She died as the result of a single gunshot wound to her head.

However, as noted, it appears that in this matter, the OCPOS made the final decision denying Adams's application for admission to a RCRP. It is not clear, however, that the OCPOS has the authority under the NJDOC's regulations to render a final decision on Adams's application.

As previously noted, N.J.A.C. 10A:20-4.5(b)(1) states that if otherwise eligible, an inmate may participate in a RCRP if the inmate has less than

eighteen months "remaining to be served" and the Commissioner or his designee determines the inmate's transfer to a RCRP is appropriate. If the regulation applies to an inmate who has to serve less than eighteen months before his established parole eligibility date, the inmate's transfer would be subject to the approval by the Commissioner or the Commissioner's designee. There is, however, no indication in the record before us that the Commissioner has delegated that authority to the OCPOS.

Moreover, N.J.A.C. 10A:20-1.4 states that the Commissioner or the Commissioner's designee has authority under N.J.S.A. 30:4-91.2 to designate the "place of confinement" for persons sentenced to serve sentences in State institutions. The regulations do not, however, delegate authority to the OCPOS to review and reverse a decision by an ICC regarding admission to an RCRP. There also is no indication on this record that the Commissioner has delegated authority to the OCPOS to make such decisions.

Accordingly, we reverse the NJDOC's final decision and remand the matter to the agency for reconsideration of Adams's application for a transfer to a RCRP in accordance with the applicable regulations. The Commissioner may, in his discretion, exercise the authority under N.J.S.A. 30:4-91.2 and determine if Adams should be transferred to a RCRP. If the OCPOS makes the final

decision on Adams's application, it must cite the statutory or regulatory basis for exercising that authority. If Adams is aggrieved by the NJDOC's decision, he may file a new appeal.

Reversed and remanded for reconsideration and issuance of a new final decision in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3469-17T4